IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CLARENCE ARMSTRONG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| ILLINOIS BELL TELEPHONE | ) | CV-00-AR-2279-S |
| COMPANY d/b/a/ AMERITECH | ) | |
| ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED
DEC 6 2000

## MEMORANDUM OPINION

Before the court is the motion of defendant, Illinois Bell Telephone Company d/b/a Ameritech Illinois ("Ameritech"), to dismiss the present action for lack of *in personam* jurisdiction. Plaintiffs, Clarence Armstrong and Janice Armstrong (the "Armstrongs"), Alabama residents, assert several claims, including defamation, invasion of privacy, placement in a false light (a cause of action with which this court was heretofore unfamiliar), and intentional infliction of emotional distress, all arising from defendants' attempts to collect a debt allegedly owed by Mr. Armstrong for telephone service provided by Ameritech. The Armstrongs contend that defendants' tortious debt collection efforts amount to the transaction of business in Alabama for the purpose of satisfying the jurisdictional requirements of Alabama's long-arm statute and federal due process concerns. Most of the

facts bearing on this court's jurisdiction and venue are undisputed.

Ameritech, an Illinois corporation, has its principal place of business in Illinois. It provides local telephone service to customers in Illinois. It does not solicit customers, nor does it provide telephone service in Alabama, and it has never done so. The Armstrongs have offered no evidence to contradict Ameritech's representations under penalty of perjury that it does not maintain any offices, agents, or mailing addresses within Alabama.

Sometime in 1995, for reasons as yet unknown, Ameritech opened an account in the name of Clarence Armstrong, and, according to Ameritech, provided local telephone service to that account in Washington Park, Illinois. Soon thereafter the account became delinquent, and a series of payment notices were sent to Mr. Armstrong at that Illinois address. On June 28, 1995, Ameritech sent what was described as a final bill to that address. If Mr. Armstrong received any bills, he did not react until February 17, 1996, when he contacted Ameritech by telephone as a result of his discovery of Ameritech's unpaid account on his credit report. As a result of this conversation, Ameritech sent Mr. Armstrong a so-called "fraud packet" including instructions to complete it and return it if he wanted to exonerate himself from liability, and to clear up his credit report, insofar as the Ameritech item was

concerned. There is no evidence that Mr. Armstrong complied or failed to comply.

In June 1996, Ameritech referred the account to CSC Credit Services, a collection agency. *Meier Depo.*, at 46. On May 7, 1997, the account was transferred to Cash Flow Consultants ("CFC"), an Illinois corporation, to collect on behalf of Ameritech. On November 18, 1998, Ameritech recalled the account from CFC and transferred it to the other defendant in this case, McAllister & Associates ("McAllister"), an Illinois corporation. McAllister's collection efforts on behalf of Ameritech, if any, have not produced any results, except perhaps, this suit.

On June 21, 2000, the Armstrongs filed their original complaint in the Circuit Court of Jefferson County, Alabama. It named the present defendants and CFC. On August 7, 2000, for reasons unknown to this court, the Armstrongs in the state court dismissed all claims against CFC. On August 16, 2000, the remaining two defendants removed the case to this court on the ground of diversity.

The burden is on a plaintiff to establish a prima facie case of personal jurisdiction over a nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990), citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A prima facie case is established if plaintiff presents enough evidence to withstand a

motion for directed verdict on that issue. *Id*. The court must accept the allegations in the complaint as true to the extent that they are uncontroverted by defendant's affidavits and depositions, and must give all reasonable inferences to the plaintiff. *Id*.

### I. LEGAL PRINCIPLES GOVERNING PERSONAL JURISDICTION

Ameritech moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(2), triggering a two-part inquiry on the issue of *in personam* jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing *in personam* jurisdiction is satisfied. *Sculptchair*, 94 F.3d at 626. If the requirements of the long-arm statute are satisfied, the court must inquire as to (1) whether the defendant has sufficient "minimum contacts" with the forum state; and (2) whether the exercise of jurisdiction over the nonresident defendant in the forum would offend "traditional notions of fair play and substantial justice." *Id*. at 630-31 (quoting *International Shoe v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945)).

An important question, if not the most important question, leading to a determination of whether the defendant has purposefully established minimum contacts with the forum, is whether the defendant's conduct and connection with the forum state are such that he, she or it should "reasonably anticipate" being

haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566 (1980). "There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts." *Duke v. Young*, 496 So.2d 37, 39 (Ala. 1986). Jurisdiction, however, cannot arise from "random, fortuitous, or attenuated contacts . . . or because of [the] unilateral activity of a third person." *Madara*, 916 F.2d at 1516. In *International Shoe*, the Supreme Court held:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

326 U.S. 310, 319, 66 S. Ct. 154, 159 (1945). A proper reading of this paragraph from *International Shoe* requires that Ameritech have done something to purposefully avail itself of the privileges accorded to Alabama residents before it can be haled into court here.

If both prongs of the jurisdictional test are satisfied—Alabama's long-arm statute and the "due process" analysis—the court may exercise *in personam* jurisdiction over a

5

nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). Conversely, a court which lacks *in personam* jurisdiction is powerless to take action, except to find that it lacks jurisdiction. *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.").[1]

## II. ALABAMA'S LONG-ARM STATUTE

In considering the reach of Alabama's long-arm statute, this court must interpret that statute as would an Alabama state court. *Robinson v. Giarmarco & Bill*, 74 F.3d 253, 256-57 (11th Cir. 1996). The Alabama long-arm statute provides, *inter alia*:

> A person has sufficient contacts with the state when that person, acting directly or by agent, . . . causing tortious injury or damage by an act or omission in this state . . . [or] otherwise having some minimum contact with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action . . . so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.

Ala. R. Civ. P. 4.2(a)(2)(C)-(I). Consequently, the reach of

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Alabama's long-arm extends to the full limits allowed by the Due Process Clause. *See Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993); *Ex parte Pope Chevrolet, Inc.*, 555 So. 2d 109, 110 (Ala. 1989); *Dillon Equities v. Palmer & Cay, Inc.*, 501 So. 2d 459, 461 (Ala. 1986).

The Armstrongs contend that the requirements of the Alabama long-arm statute, Ala. R. Civ. P. 4.2(a)(2)(C), are met by virtue of Ameritech's "reporting remarks and thus invading plaintiff's [singular] privacy and defaming plaintiff [singular] to credit reporting agencies and damaging plaintiff's [singular] credit" in Alabama. *Pla. Response*, at 1. These plaintiffs have used a colorful illustration for their argument. They contend that Ameritech's reporting of adverse credit information and debt collection efforts, either directly or through agents,[2] amounted to

---

[2] Under Alabama law, "agency is generally a question of fact to be determined by the trier of fact," and "when a defendant's liability is to be based on agency, agency may not be presumed." *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 890 (Ala. 1994). The Armstrongs' briefs filed with the court do not address the issue of an agency relationship between Ameritech and either CFC or McAllister. If anything, the Armstrongs only allege that Ameritech reported Mr. Armstrong "as a bad debt and reported derogatory remarks either directly or through their *agents*" (Pla. Response at p.1 (emphasis supplied)). Presumably, the "agents" the Armstrongs refer to are either CFC or McAllister. These allegations contained in the Armstrongs' documents lack evidentiary support.
During oral arguments on November 20, 2000, however, the Armstrongs directed the court's attention to *General Finance Corp. v. Smith*, 505 So.2d 1045 (Ala. 1987), to bolster their argument under an agency theory. In a *per curiam* opinion, the *Smith* court held that an employer could not escape liability for the tortious acts committed by an independent contractor because the employer was still responsible for the negligent

a "rifle shot into the state of Alabama [that] injured Plaintiff's [singular] credit and credit reputation." *Pla. Add. Response*, at ¶4.

Although Ameritech has no burden of proving that the long-arm cannot reach it, Ameritech points out that its contacts with Alabama were at best sporadic, and that any contacts with the Armstrongs in Alabama "were prompted by [Mr. Armstrong's] initial phone call to Ameritech in 1995" (*Def. Supp. Brief* at p. 9), and that any additional telephone calls to the Armstrongs in Alabama were from collection agencies, and not from Ameritech staff. Therefore, Ameritech would have this court conclude that it lacks

---

or malicious performance of non-delegable duties. *Id*. at 1047. In *Smith*, defendants delegated to an independent contractor the duty to repossess plaintiff's vehicle. *Id*. The independent contractor there repossessed the vehicle in a wrongful manner, thereby breaching the peace, and by implication violating Alabama Code § 7-9-503 (1975). *Id*. at 1408. Section 7-9-503, which had been incorporated into the contract between the parties, provides that "a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace." *Id*. at 1407. The court found that defendant could not insulate itself from liability resulting from the breach of the peace simply by employing an independent contractor. *Id*.

The basis for holding the defendants liable under an agency theory in *Smith*, namely, violating provisions of section 7-9-503, are absent in the present case. Here, there is no agreement between the parties incorporating any Alabama statutes that would hold Ameritech liable for the tortious acts of either CFC or McAllister, who are ostensibly independent contractors. Moreover, it does not appear that Ameritech exercised control over the manner with which CFC and/or McAllister performed its collection efforts. As such, the court finds that the Armstrongs have failed to allege, much less to prove, sufficient facts to support a finding of agency. *Malmberg*, 644 So. 2d at 890 (holding that test for agency is "whether the alleged principal exercised a right of control over the manner of the alleged agent's performance").

8

sufficient minimum contacts with Alabama to support *in personam* jurisdiction.

As mentioned, Alabama Rule of Civil Procedure 4.2(a)(2)(C) subjects any person who "causes tortious injury or damage by an act or omission" within the state of Alabama to the jurisdiction of the Alabama courts. The Armstrongs have alleged a variety of torts, the viability of which remain in dispute. It is beyond the scope of the present inquiry, however, to try to ascertain the truth of the Armstrongs' allegations of wrongdoing, except for those that are relevant to jurisdiction. "In order to determine whether a tort was not committed by the defendant, this court would have to conduct a full scale inquiry," *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1250 (11th Cir. 2000), something this court is not called upon to do when considering a motion to dismiss for lack of *in personam* jurisdiction. Therefore, construing the facts in the light most favorable to the Armstrongs, the court holds that the alleged torts of defamation, invasion of privacy, placement in a false light, and intentional infliction of emotional distress constitute torts causing injury within the State of Alabama within the contemplation of Alabama's long-arm.

### III. FEDERAL DUE PROCESS ANALYSIS

Although the Armstrongs may have met the statutory standard of Alabama Rule of Civil Procedure 4.2(a)(2)(C), that does not end the

inquiry. The court must apply an altogether different analysis regarding minimum contacts and federal "due process" requirements that are built into Alabama's long-arm scheme. There are three considerations under the Due Process Clause analysis: (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself thereby creating a "substantial connection" with the forum state; and (3) reasonable foreseeability that "'[a defendant] should reasonably anticipate being haled into court there.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1980)); *see also Future Technology Today, Inc.*, 218 F.3d at 1250-51.

The Armstrongs rely on a variety of cases that either lack precedential value in this jurisdiction, or are distinguishable. For example, the Armstrongs rely on *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972), which found a nonresident defendant to have conducted activity within the state for the purpose of submitting to its jurisdiction when he knowingly sent into the state "a false statement, intending that it should be relied upon to the injury of the resident of that state." The court noted that sending a libelous statement into a state is indistinguishable from "the frequently hypothesized but rarely encountered gunman firing across a state line." *Id.* at 664 (quoting

10

*Buckley v. New York Post Corp.*, 373 F.2d 175, 179 (2d Cir. 1967)). In the present case, there is no proof that Ameritech itself knowingly sent any derogatory credit information, much less false information, into Alabama.[3]

Lastly, this court cannot find any strong Alabama state interest in haling Illinois corporations into Alabama courts as an appropriate response to an insignificant number of telephone calls from Illinois and the mailing of a "fraud packet" into Alabama. Ameritech has neither set an actual nor a constructive foot in Alabama. Ameritech's only direct contact whatsoever with Alabama was in response to the unilateral activity of Mr. Armstrong, who just happened to be a resident of Alabama. The nexus between Ameritech's actions and the consequences of those actions do not establish enough contacts with Alabama to pass the threshold "minimum" to cause Ameritech to have reasonably anticipated being haled into court here. Ameritech's contacts with Alabama are

---

[3] Under Alabama law, the only way for the Armstrongs to satisfy the so-called "Gunman Firing Across a State Line" hypothetical would be if Ameritech, while causing tortious injury or damage in Alabama by an act or omission outside Alabama, was regularly doing or soliciting business in this state. *See* Ala. R. Civ. P. 4.2(a)(2)(D). It is apparent to this court that Ameritech's actions, whether tortious or otherwise, originated in Illinois, while the Armstrongs contend that Ameritech's actions, irrespective of their origin, caused injury in this state. As stated *supra*, the Armstrongs have offered no evidence to contradict Ameritech's representation that it does not conduct any business or maintain any offices, agents, or mailing addresses, within Alabama. As such, the Armstrongs failed to satisfy the statutory requirements of Ala. R. Civ. P. 4.2(a)(2)(D).

indirect, random, fortuitous and attenuated. They simply do not meet the "due process" standard for establishing a basis for *in personam* jurisdiction.

## CONCLUSION

While the technical statutory formula for satisfying Alabama's long-arm statute may have been met, the "due process" considerations of minimum contacts and fair play prevent this action from proceeding in this court. A separate and appropriate order will be entered in accordance with this opinion.

DONE this 6th day of December, 2000.

```
                    _____
                    WILLIAM M. ACKER, JR.
                    UNITED STATES DISTRICT JUDGE
```